```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

 DIANELA GOMEZ DE LA ROSA,

                    Plaintiff,              MEMORANDUM & ORDER
                                               21-CV-1837(EK)

          -against-

 KILOLO KIJAKAZI,

                    Defendant.¹
-----------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Dianela Gomez De La Rosa challenges the Social Security Administration's denial of her claim for disability insurance benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, I grant Gomez's motion and deny the Commissioner's cross-motion.

        **I.   Background**

**A.   Procedural Background**

        In September 2017, Gomez applied for disability benefits, alleging a disability onset date of June 3, 2016. Administrative Tr. ("Tr.") 53, 158-59, ECF No. 7.  The agency

---

    ¹ Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former Commissioner of Social Security, as the Defendant in this suit.  *See* 42 U.S.C. § 405(g).  The Clerk of Court is respectfully directed to update the caption accordingly.

denied her claim in November 2017. *Id*. at 53, 70-74. On July 22, 2019, an administrative law judge ("ALJ") held a hearing on Gomez's claim. *Id*. at 17-40, 53. The ALJ concluded that Gomez was not disabled and therefore not entitled to disability benefits. *Id*. at 53-64. The Appeals Council denied her request for review of the ALJ's decision, rendering it final. *Id*. at 1-6. Gomez timely sought review of that decision in this Court. ECF No. 1.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the

2

ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, ALJ Gloria Pellegrino determined that Gomez had not engaged in substantial gainful activity since the alleged onset date. Tr. 56. She also determined that Gomez suffered from the following "severe impairments": asthma, cervical disc herniation, carpal tunnel syndrome, obesity, bipolar disorder, anxiety, and depression. *Id.* The ALJ went on to conclude, however, that none of these impairments rose to the level of a Listed Impairment. *Id.* at 56-58.

When the ALJ finds that a claimant has severe impairments that do not meet the requirements of the Listings, she must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is the most a claimant can do in a work setting notwithstanding her limitations. *Id.* § 404.1545(a)(1). The ALJ concluded here that Gomez had the RFC to perform "light work," with certain limitations. Tr. 58. Those limitations included that Gomez could only occasionally crouch or stoop, and that she could not be exposed "to extreme heat and cold, wetness and humidity,"

"respiratory irritants," or "hazards such as dangerous moving machinery or unprotected heights." *Id*. The ALJ also clarified that Gomez is "limited to simple and routine tasks." *Id*.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (f). Here, the ALJ found that Gomez could not perform her past work as an administrative clerk. Tr. 63. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ determined that Gomez could perform certain such jobs, including as an "Inspector of Plastic Products," "Assembler of Small Products," and "Weigher." Tr. 64. Given that conclusion, the ALJ determined that Gomez was not disabled. *Id*.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

4

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[2] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

Gomez raises two arguments on appeal. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 1, ECF No. 11. First, she argues that the ALJ "erred by failing to consider all of [her] mental limitations in the RFC" assessment. *Id.* at 7. Specifically, Gomez contends, the ALJ provided no explanation of how her "mental limitations and associated symptoms of panic attacks and trouble breathing were factored," if at all, into the RFC. *Id.* at 8. Second, she asserts that the ALJ "erred in finding [she] can do light work with her physical impairments." *Id.* at 9. I conclude that the ALJ's findings as to Gomez's physical limitations are supported by substantial evidence, but that the findings as to her mental limitations are not. Therefore, remand is warranted.

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

A.   **Gomez's Physical Limitations**

Gomez contends that the ALJ's RFC assessment was not supported by substantial evidence when it came to her physical impairments.  The ALJ concluded that Gomez was limited to "light work" with the limitations discussed above, plus the limitation that she can perform "frequent, but not constant, handling and fingering with both hands."  Tr. 58.  Gomez argues that these limitations should have been even more pronounced: the ALJ's RFC determination was not supported by substantial evidence because the medical records and Gomez's own testimony show that she cannot frequently handle and finger using both hands.  Pl. Mem. 9.

The ALJ's RFC assessment on this front was supported by substantial evidence.  The ALJ expressly considered Gomez's symptoms of bilateral hand and wrist pain, as well as the medical evidence showing positive signs for carpal tunnel syndrome.  Tr. 59-62.

All of the medical opinions in this case — save for Dr. Arkadiy Shusterman, an internist who treated Gomez from July 2016 to February 2017 — concluded that she could work with limitations.  Dr. Maury Harris, her *treating* orthopedic surgeon, concluded that Gomez could work, albeit with limitations on repetitive and prolonged use of the bilateral wrists and hands.  *Id.* at 317.  The ALJ founded that opinion somewhat persuasive,

6

as it was supported by Dr. Harris's own examination findings of full bilateral grip strength and was generally consistent with the record as a whole.  *Id.* at 62, 316; *see also id.* at 243, 267, 314-17, 532, 536, 952.

The ALJ also found consultative examiner Dr. Lyudmila Trimba's opinion as to Gomez's functional limitations highly persuasive.  *Id.* at 60, 62.  Based on an October 2017 examination, Dr. Trimba assessed that Gomez had a full range of motion in her wrists, full grip strength, and intact hand and finger dexterity.  *Id.* at 265-68.  As relevant here, Dr. Trimba opined that she had only mild limitations in her ability to push, pull, or carry heavy objects.  *Id.* at 267.  The ALJ found this opinion was consistent with the entire record as it relates to Gomez's carpal tunnel syndrome, and she factored it in accordingly by assessing an RFC of light work.

Moreover, the ALJ found the conclusions of Dr. C. Li, the state agency consultative examiner, somewhat persuasive. Dr. Li concluded that Gomez could perform light work while avoiding concentrated exposure to pulmonary irritants.  *Id.* at 46-47, 61.  The ALJ, however, only afforded Dr. Li's opinion somewhat persuasive value because it was inconsistent with the hearing evidence of Gomez's carpal tunnel syndrome and neck impairment.  *Id.* at 61.

7

Finally, the ALJ properly declined to afford Dr. Shusterman's statement that Gomez was "totally disabled" any persuasive value. *Id.* at 62; *see id.* at 248, 250, 252, 254. Disability is the ultimate legal issue "expressly reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999); *see* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). And as the ALJ correctly observed, Dr. Shusterman's statements were provided in the context of Gomez's worker compensation claim, Tr. 62, which implicates standards for disability "entirely distinguishable" from those for Social Security disability benefits. *See, e.g.*, *Naumov v. Comm'r of Soc. Sec.*, 539 F. Supp. 3d 273, 275 (E.D.N.Y. 2021). The ALJ also found Dr. Shusterman's opinion inconsistent with his own treatment records, which showed "mild findings" of carpal tunnel syndrome in both wrists but normal grip strength in both hands, and the medical evidence as a whole. Tr. 62.

In addition to the medical opinions, the ALJ concluded that Gomez's treatment records were "inconsistent with the alleged severity of her impairments." *Id.* at 61. For example, during an October 2016 examination with Dr. Harris, Gomez did not complain of "tenderness upon palpation of the cervical spine." *Id.* At that same examination, the ALJ noted, Gomez's

8

grip strength was assessed at 5/5 in both hands, and she was diagnosed as having "*resolved* cervical spine sprain and *resolving* bilateral wrist / hand carpal tunnel syndrome." *Id.*; *see id.* at 316–17.

Thus, the ALJ's RFC assessment as to Gomez's physical limitations accounted for her symptoms, the opinions of several medical professionals regarding the limitations on her functioning and ability to work, and the objective medical evidence in the record. This aspect of the RFC assessment was supported by substantial evidence.

**B.   Gomez's Mental Limitations**

Remand is nevertheless appropriate, however, because the ALJ failed to properly evaluate all of the evidence relating to Gomez's mental limitations — namely, her anxiety and associated symptoms of panic attacks — when assessing her RFC.

As relevant here, the ALJ assessed an RFC of "light work" that limited Gomez to "simple and routine tasks." *Id.* at 58. In making that RFC determination, the ALJ acknowledged Gomez's "history of bipolar disorder, anxiety, and depression," as reflected in the record. *Id.* at 60. In a relatively short discussion of Gomez's mental impairments, the ALJ focused on an October 2016 neuropsychological evaluation, at which Dr. Sanam Hafeez and Michael Fodera administered more than a dozen tests. *Id.* at 60–61; *see id.* at 300–11. As detailed in that report,

9

and noted by the ALJ, Gomez reported having panic attacks and anxiety that were "worsening consistently." *Id.* at 60, 300. Dr. Hafeez and Fodera diagnosed her with various mental conditions, including "bipolar II disorder (severe most current or recent episode depressed), generalized anxiety disorder, somatic symptom disorder (prominent hypochondriacal features), panic disorder, and attention-deficit/hyperactivity disorder." *Id.* at 60, 309.

The ALJ also noted, in her decision, Gomez's hearing testimony that "receives treatment for anxiety and depression" and "does not like to leave her home." *Id.* at 59; *see id.* at 28-29. The ALJ, however, discounted her "allegations of . . . mental impairments" as "not entirely consistent" with the evidence in the record. *Id.* at 61. In support of that credibility finding, she cited to the results of only one of the tests conducted during the October 2016 evaluation — the "Cognistat" functioning test — which indicated that Gomez's "orientation, attention, language comprehension, repetition, and naming, memory, calculations, and reasoning with both similarities and judgment" all "fell at the average range." *Id.*; *see id.* at 308.

A review of the record and the ALJ's decision indicates that the ALJ erred by failing to evaluate and account for the full extent of Gomez's mental impairments, including her

10

anxiety and associated symptoms of panic attacks, as required. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (requiring an ALJ to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

Notably absent from the ALJ's discussion of the October 2016 neuropsychological evaluation are the test results relevant to Gomez's anxiety and depression, which the ALJ found to be severe impairments. Among other tests, the "Overall Anxiety Severity and Impairment Scale" returned a score result that was "indicative of anxiety." Tr. 304. Gomez's results on a "Symptom Checklist – 90-R" test, which was administered to measure "depression, anxiety, paranoia, hostility, etc.," indicated "elevated scores on all clinical scales"; her global score was "significantly elevated at a clinical range suggesting the presence of psychological/psychiatric symptoms that warrant immediate attention and remediation." *Id.* at 304-05. And her results on a "Panic Disorder Severity Scale-Self Report" suggested a "severe panic disorder," while her assessment on a "Severity Measure of Panic Disorder — Adult" likewise indicated a "severe" score. *Id.* at 308.

11

In relying primarily on the "average" results of Gomez's Cognistat functioning test, see id. at 60, 308, the ALJ failed to evaluate other pertinent evidence from the same report bearing directly on the extent of, and limitations caused by, her anxiety and depression.  This omission points to the possibility that the order below "improperly credit[ed] evidence that supports [certain] findings while ignoring conflicting evidence from the same source."  Dowling v. Comm'r of Soc. Sec., No. 14-CV-0786, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015).  An ALJ "cannot pick and choose evidence that supports a particular conclusion" — here, that Gomez's allegations about her mental impairments were not fully credible — and the "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."  Smith v. Bowen, 687 F. Supp. 902, 904 (S.D.N.Y. 1988); see Younes v. Colvin, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).

Other record evidence is insufficient to support the RFC assessment, and serves to highlight the inadequacy of the ALJ's discussion of how Gomez's anxiety and depression and associated symptoms factored into the RFC determination.  For example, the ALJ noted that Gomez "exhibited normal mood and affect during [an] examination in March 2017," and a June 2019 examination record similarly indicated that Gomez had a "normal affect."  Tr. 60.  But mental impairments like anxiety and

depression are not "static," and the "frequency and severity of symptoms can change over time due to various factors." *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229 (N.D.N.Y. 1998). As the Second Circuit recently observed, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019).

Gomez testified, moreover, that she experiences "anxiety symptoms" — which include trouble breathing and heart palpitations — "every day," with these panic attacks lasting "between twenty and thirty minutes." Tr. 28. The ALJ did not directly engage with this testimony. Nor did she make any specific findings as to the frequency or duration of Gomez's panic attacks, and how they would affect her ability to work. This, too, warrants remand. *See, e.g.*, *Garretto v. Colvin*, No. 15-CV-8734, 2017 WL 1131906, at *19 (S.D.N.Y. Mar. 27, 2017) ("The ALJ's failure to consider the evidence in the record and to develop and clarify the record regarding plaintiff's anxiety warrants remand.").

In short, the ALJ failed to adequately assess the full extent of Gomez's mental impairments and explain how they factored into her RFC determination. Remand is therefore

appropriate "for further findings," or at the very least, "a clearer explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).  On remand, the ALJ should "investigate and develop the facts" regarding Gomez's mental conditions, including the frequency, duration, date of onset, and severity of any associated symptoms, to address any deficiencies in the current administrative record.  *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009).

## IV. Conclusion

For the foregoing reasons, Gomez's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.  The case is remanded for further proceedings consistent with this Order.

SO ORDERED.

                                                           /s/ Eric Komitee
                                           ERIC KOMITEE
                                           United States District Judge

Dated:    September 28, 2023
            Brooklyn, New York